IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Lee F. Pool, | Case No. 3:15 CV 1430 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Patricia Klenz, et al., | |
| Defendants. | |

## INTRODUCTION

Prisoner Plaintiff Lee Pool brought this action against Defendants Gary Mohr, John Coleman, Kevin Jones, Ray Schaublin, Brooke Featheringham, Thomas Lin, Patricia Klenz, Tim Werling, Karen Moore, Paul Kerher, Robert Collins, and John/Jane Doe (Doc. 1), alleging violations of his civil rights. This Court previously dismissed Plaintiff's claims against Defendants Mohr, Coleman, Jones, Schaublin, Featheringham, Lin, Collins, and John/Jane Doe (Doc. 3). The parties agree Plaintiff's remaining claims -- against Defendants Kerher, Klenz, Moore, and Werling -- are limited to complaints about two aspects of Plaintiff's prison life: Plaintiff's participation in the Incarcerated Veterans of America (IVA), and Plaintiff's practice of his Sunni Muslim faith (Doc. 36 at 2, 4).

Defendants moved for summary judgment. Plaintiff opposes, and the matter has been fully briefed (Docs. 36–37, 40–41).

**MATERIAL FACTS**

Pool, who is serving a life sentence at Allen/Oakwood Correctional Institution (AOCI), was a member of the IVA (Doc. 36 at 4–5). He was elected Vice President of that organization and later took over as President (*id.*).

All inmate groups at AOCI must have an employee from the Ohio Department of Rehabilitation and Correction (ODRC) act as a volunteer staff advisor, and they may not operate or conduct any business without a staff advisor present (*id.* at 5). In September 2014, the Warden's Office held a meeting with members of the IVA (*id.*). At the meeting, the Warden told the group it was suspended because of member infighting and because there were no staff members who were willing to serve as a staff advisor (Doc. 37-2 at 5). He further explained that the group would remain suspended until the Inmate Group Coordinator, the Institutional Inspector, and the staff advisors all informed him the IVA was again ready to function properly (*id.*). Pool signed a copy of the minutes from the meeting with the Warden (*id.*).

In June 2015, the acting Inmate Group Coordinator recommended to the Warden that the IVA be dissolved because of its failure to address the issues raised by the Warden at the meeting (*id.* at 4). The Warden approved the dissolution, and the ODRC ratified the Warden's decision (*id.*).

**BACKGROUND**

Pool alleges Defendants retaliated against him because he filed grievances, filed a lawsuit, and because he is a Muslim. According to Pool, Defendants retaliated primarily in two ways: they attempted to force him out as President of the IVA and eventually caused the IVA to be dissolved, and they interfered with his ability to practice his Sunni Muslim faith. Pool also alleges unspecified

Defendants violated his constitutional rights to equal protection and access to the courts. In support of his broader allegations, Pool offers the following disputed facts.

*Access to Courts.* Pool attempted to file a Motion for a Preliminary Injunction and Temporary Restraining Order (TRO) against Defendant Klenz -- among others -- in May 2013 (Doc. 1-3 at 1–2). That action was dismissed without prejudice because Pool failed to include a complaint with his Motion (*id.* at 2). According to Pool, his complaint kept getting deleted from the prison computer (Doc. 40 at 8). He surmises that someone on the staff must have been responsible for deleting the file. Thus, he claims, the staff was responsible for his lawsuit being dismissed (*id.* at 13). Pool acknowledges he does not know who deleted the file (Doc. 37-9 at 38).

*Defendant Kerher.* Pool alleges Kerher -- as the staff supervisor for the IVA who was present at the meeting in question -- "did not step up and do something when Klenz was acting the way she was" (Doc. 40 at 5). Klenz allegedly entered an IVA meeting on April 5, 2013 in a "combative and threatening manner hollering that Pool was a liar" (*id.* at 4). She then went on to throw written bylaws in Pool's direction and said she would not use her vehicles to pick up items for IVA fundraising until "you guys do something for these guys" (*id.* at 5). Pool interpreted Klenz's statement to mean she would not volunteer to help until the members removed Pool as President (*id.*). In short, Pool alleges Kerher was responsible for Klenz's actions at that meeting.

Pool also alleges Kerher: selectively distributed flyers notifying inmates of IVA meetings; tried to implement a rule restricting IVA voting and elections to only those members who were in the group for at least six months; and tried to force Pool to hold an IVA election by threatening that no advisors would agree to supervise the group otherwise (*id.* at 4–6). Plaintiff further alleges Kerher and the rest of the staff "wanted the election rigged because before that Klenz had told him in the

3

chapel with Werling that they didn't want a Muslim to be president of a military organization" (*id.* at 6).

*Defendant Klenz.* Pool alleges that in October 2012, Klenz and Werling "began arousing inmates to retaliate against him" (*id.* at 7; Doc. 37-9 at 32). Specifically, Klenz and Werling told another inmate "to do something with Pool and remove [him] as President" (Doc. 40 at 7). In November 2012, she allegedly told Pool he would not be President of the IVA for long (*id.*). And in April 2013, she allegedly told Pool she would be at the next IVA meeting and would "give [him] hell" (*id.*). She and Werling then told him he "put too many blacks on the committee and that if he kept complaining to the warden she was thinking about putting him in the hole" (*id.*).

Klenz also was at the center of the April 2013 incident, where she allegedly threw written bylaws in Pool's direction, called him a liar, and (according to Pool's interpretation of her statement) threatened to withhold the use of her vehicles for fundraising activities until Pool was removed as President (*id.* at 4–5). She also allegedly told Pool the staff did not want a Muslim to be president of a military organization (*id.* at 6). Finally, on April 25, 2013, Klenz allegedly told Pool "she is not a Muslim woman and that she does not care for nor respect his religion" (*id.* at 7).

*Defendant Moore.* Pool alleges Moore and Werling disclosed his military records to third parties -- including his social security number -- as part of an effort to remove him as President of the IVA (*id.* at 8). Moore, as a staff advisor, also allegedly attempted to force him to sign a document adding members to the IVA, "despite there being good reasons not to have these individuals in the group" (*id.*). Finally, Moore allegedly had Werling prevent Plaintiff from coming in to the IVA office and had a lock placed on the IVA file cabinet (*id.*).

4

*Defendant Werling*. In addition to the allegations about Klenz and Werling "arousing inmates to retaliate against" Pool, Werling also allegedly was involved with Moore in both sharing Pool's military records with third parties and blocking Pool from accessing the IVA office and file cabinet (*id.* at 7–8). Pool further alleges Werling told him -- in reference to the TRO he filed against Klenz -- that "snitching is something like whistleblowing" and that he should "back off of Lieutenant Klenz and he would have her stop harassing him" (*id.* at 3).

On April 10, 2013, Werling allegedly allowed a group of inmates to control religious services, which -- according to Pool -- was against "rules and regulations" (*id.* at 2–3). He also allegedly refused to allow Pool into the chapel, and he told Pool he could get back in "when he blended his beliefs" -- which Pool could not do as a Sunni Muslim (*id.* at 3). As a result, Pool claims he had nowhere to pray as a group with other Sunni Muslims (*id.*). Pool attributes Werling's conduct to the fact that Pool wrote a complaint, and he adds that he has not been allowed to pray in the chapel from that day forward (*id.*). As further evidence of Werling's alleged hostility toward his race and religion, Pool provides the sworn statement of another inmate who alleges Werling -- in 2016 -- made racist comments referencing the Muslim faith (Doc. 40 at 13; Doc. 40-5 at 49).

## GRIEVANCE HISTORY

The parties agree Pool filed a number of grievances concerning his issues with Defendants. Preliminary inquiries for this Court are whether Pool received a decision at each step of Ohio's three-step grievance process and whether Pool exhausted the grievance process as he was required to do. The record shows he received a decision at each step of the process for only two matters: (1) Moore's alleged attempt to have him sign a document adding members to the IVA; and (2) an incident where

Klenz allegedly forced Pool to go to the back of the food line and threatened to put him "in the hole" in retaliation for filing grievances against her (Doc. 37-7 at 7, 17–50).

Although Pool acknowledges he did not receive a decision at each step of the process for his other complaints against Defendants, he alleges he never received responses to some of his filings (Doc. 40 at 9–12). Specifically, he alleges he never received a response to: (1) an Informal Complaint Resolution (ICR) he filed on December 15, 2012 concerning Klenz's and Werling's alleged attempts to get other inmates to retaliate against him (along with Klenz's expressed preference that he not be President of the IVA); and (2) a grievance and appeal he filed -- following up on a previous ICR -- concerning the incident where Klenz allegedly threw paper bylaws in his direction and threatened to quit volunteering for the group if he remained as President (*see* Doc. 40 at 10; Doc. 40-1 at 3; Doc. 40-3 at 33–35, 37–41, 43–45, 97–99). Defendants claim Pool never filed those documents (Doc. 41 at 8).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," and the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). This Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, this Court does not weigh the evidence or determine the truth of any matter in dispute; rather, it evaluates only whether the record contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In addition, non-exhaustion is an affirmative defense under the Prison Litigation Reform Act (PLRA), and the burden of proof falls on Defendants. *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir.

2016). Thus, summary judgment may be granted only if Defendants establish "the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

## ANALYSIS

Defendants move for summary judgment on three grounds: (1) Pool's official-capacity claims for monetary damages are barred by the Eleventh Amendment; (2) Pool failed to exhaust most of his claims under the PLRA; and (3) Pool failed to state a claim under Section 1983. This Court will address these arguments in turn.

### 1. Pool's official capacity claims are barred by the Eleventh Amendment to the extent they seek monetary damages.

The parties appear to agree (Doc. 40 at 9; Doc 41 at 7) -- and are correct -- that the Eleventh Amendment bars claims for monetary relief against state officials in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But it does not bar claims for prospective injunctive relief. *Mich. Corr. Org. v. Mich. Dep't of State*, 774 F.3d 895, 904 (6th Cir. 2014). To the extent Pool is seeking monetary damages against Defendants in their official capacities, his claims are barred as a matter of law.

### 2. Pool failed to exhaust nearly all of his claims.

The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

An inmate exhausts administrative remedies only by "taking advantage of *each step* the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the

7

prison's grievance procedure to permit prison officials to review and, if necessary, correct the grievance 'on the merits.'" *Troche*, 814 F.3d at 798 (emphasis added) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

In Ohio, an inmate generally must follow a three-step grievance procedure, consisting of: (1) an informal complaint; (2) a notification of grievance; and (3) an appeal to the Chief Inspector. Ohio Admin. Code § 5120-9-31(K). The Ohio Administrative Code also discusses what a prisoner should do if he does not receive a response to his informal complaint. It states that "within a reasonable time, the inmate should immediately contact the inspector of institutional services either in writing or during regular office hours." *Troche*, 814 F.3d at 799 (quoting Ohio Admin. Code § 5120-9-31(K)(1)). If he does not receive "a response by the end of the fourth day, 'the informal complaint step is automatically waived.'" *Id.* Further, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint procedure has been waived," the inmate must then file a notification of grievance within fourteen days. *Id.*

In this case, Pool failed to take advantage of *each step* of Ohio's required grievance procedure concerning the majority of his allegations. Pool nevertheless argues that exhaustion should not be required because: (1) he was threatened with retaliation and thus the grievance process was unavailable to him; and (2) he never received a response to a few of his administrative filings (Doc. 40 at 9). Each argument fails.

With respect to his contention that Defendants threatened to retaliate against him for filing grievances, Pool fails to establish the applicability of an exception. Pool cites *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008), for the proposition that threats of retaliation may render

8

administrative remedies unavailable to an inmate. But the Eleventh Circuit in *Turner* held that threats of retaliation excuse an inmate's failure to exhaust only if the inmate establishes:

> (1) the threat [of retaliation] *actually did deter* the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.* (emphasis added).

Pool provides no evidence suggesting Defendants' conduct actually deterred him from utilizing any part of the grievance process. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("[A] prisoner who contends that he failed to exhaust out of fear should . . . have to 'describe with specificity' the factual basis for his fear."). Nothing in the record suggests Pool was afraid to file a grievance. On the contrary, the extensive record of Pool's grievances establishes the opposite (*see* Doc. 37-3) (showing Pool's extensive -- although incomplete -- use of the prison's grievance process). Indeed, Pool filed numerous informal complaints concerning Defendants' alleged threats of retaliation; he simply failed to follow through on them. There is no basis to conclude threats had anything to do with his failure to pursue any grievance.

Pool's argument that exhaustion was excused by the prison's alleged failure to respond to grievances fares no better. Although "[i]t is well established that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance," an inmate must still comply with the applicable procedure with respect to the grievance in question. *See Risher*, 639 F.3d at 240–41 (internal quotations omitted); *Troche*, 814 F.3d at 798–801. Even assuming, as this Court does for purposes of this Motion, that Pool filed the complaints and grievances at issue, they do not fall within an exception to the exhaustion requirement.

9

With respect to the ICR allegedly submitted by Pool on December 15, 2012 (Doc. 40-3 at 34–35), Pool provides no evidence he followed up on the prison's alleged failure to respond. *See Troche*, 814 F.3d at 799 (quoting Ohio Admin. Code § 5120-9-31(K)(1)). Specifically, Pool was required to contact the "inspector of institutional services" concerning the lack of response, wait four days, and then file a notification of grievance within fourteen days. *See id.* Pool did not follow this procedure. Thus, the prison did not waive its right to respond to Pool's ICR, and Pool is not deemed to have exhausted his administrative remedies on those issues.

Similarly, with respect to the Notification of Grievance allegedly filed on May 12, 2013 (Doc. 40-3 at 37–41), following up on an ICR filed on April 6, 2013 (*id.* at 97–99), Pool again fails to show he complied with the Ohio Administrative Code. The record reflects Featheringham responded to Pool's ICR on April 18, 2013 (*id. at 97*). Thus, to comply with Ohio's grievance procedure, Pool was required to file his Notice of Grievance within fourteen days -- by May 2, 2013. *See Troche*, 814 F.3d at 799; Ohio Admin. Code § 5120-9-31(K)(2). Pool's Notice of Grievance was filed (if at all) on May 12, 2013 (Doc. 40-3 at 37). Thus, Pool's Notice of Grievance was (at best) untimely, and it cannot serve as a basis for exhausting Pool's administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) ("Proper exhaustion demands compliance with an agency's deadlines . . . because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

Pool's untimely Notice of Grievance likewise dooms his reliance on the subsequent Appeal to the Chief Inspector allegedly filed on June 4, 2013 (Doc. 40-3 at 43–45). This Court finds that Pool

failed to exhaust his administrative remedies with respect to all but two issues: (1) Moore's alleged attempt to have him sign a document adding members to the IVA; and (2) the incident where Klenz allegedly forced Pool to go to the back of the food line and threatened to put him "in the hole" in retaliation for his filing grievances against her (Doc. 37-7 at 7, 17–50). Pool's other claims are barred as a matter of law.

### 3. Pool fails to state a claim under Section 1983.

Pool fails to state a claim based on the two issues he administratively exhausted for at least two reasons: they do not involve infringement of Pool's constitutional rights, and Defendants are entitled to qualified immunity.

With respect to Defendant Moore, Pool's exhausted ICR alleges she tried to force him to sign a document adding certain members to the IVA, and Pool believed those inmates should not be part of the group (*see* Doc. 37-7 at 17–19). Even if true, this does not suggest a constitutional violation. The Constitution is not concerned with whether the rules of the IVA -- as Pool understands them -- are followed. And even if the issue of retaliation were properly before this Court, Moore's alleged attempt to force him to add members to the IVA would not violate the Constitution.

A prima facie case for retaliation requires Pool to prove: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Here, Pool alleges he participated in protected conduct by filing grievances, filing lawsuits, and practicing his Sunni Muslim faith. But Pool fails to show any connection between Moore's alleged attempt to add members to the IVA and any of these protected activities. Moreover, he fails to show how Moore's conduct would

11

deter a person of ordinary firmness from continuing to engage in those protected activities. Indeed, Pool did not refrain from filing grievances, utilizing the court system, or practicing his faith. Accordingly, viewing the record in the light most favorable to him, Pool fails to state a constitutional claim against Moore.

Pool's claim against Klenz similarly fails. Pool's exhausted ICR alleges Klenz forced him to go to the back of the food line and threatened to put him "in the hole" (*see* Doc. 37-7 at 37–38). But there is no evidence Klenz actually put Pool "in the hole." And the fact that Klenz allegedly told Pool to go to the back of the line to get his food does not rise -- not even close -- to the level of a constitutional infringement. Again, Pool fails to show that an inmate of ordinary firmness would refrain from filing grievances, accessing the courts, or practicing their religion because of Klenz's conduct. Accordingly, Pool's claim for retaliation against Klenz fails as a matter of law.

Even assuming Klenz and Moore somehow violated Pool's constitutional rights, Pool's claims would fail because he has not demonstrated that Defendants' conduct violated "clearly established" law. Qualified immunity shields government officials performing discretionary functions from lawsuits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007). Pool "carries the burden of proof to show that the defendant is not entitled to qualified immunity." *Id.*

Not only does Pool fail to demonstrate a violation of the Constitution, his Brief in Opposition does not even attempt to address Defendants' qualified immunity argument. Pool makes no mention of either qualified immunity or "clearly established" constitutional rights. Pool fails to defeat

12

Defendants' qualified immunity. And his failure to address Defendants' arguments concerning alleged equal protection violations similarly dooms any such claims.

## CONCLUSION

For the many reasons outlined above, Defendants' Motion is granted, and the case is dismissed.

IT IS SO ORDERED.

                                          s/ *Jack Zouhary*
                                         JACK ZOUHARY
                                         U. S. DISTRICT JUDGE

March 24, 2017